IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WALTER J. FELT, JR.                                                                           PLAINTIFF

        v.                         Civil No. 14-2083

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                            DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, Walter Felt, Jr., brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

      Plaintiff filed his applications for DIB and SSI on December 22, 2011, alleging an onset date of November 20, 2011, due to asthma, diabetes, a learning disability, schizophrenia, manic depressive disorder, bipolar disorder, and an unspecified anger disorder.  Tr. 139-144, 145-151, 182, 196-197, 222-223.  The Commissioner denied his application initially and on reconsideration. Tr. 73-79.  At the Plaintiff's request, an Administrative Law Judge ("ALJ") held an administrative hearing on January 17, 2013.  Tr. 29-54.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 48 years old and possessed a ninth grade education. Tr. 21, 36-37.  He had past relevant work ("PRW") experience as a mechanic's helper.  Tr. 49-50, 198-205, 237-244.

On May 31, 2013, the ALJ concluded that the Plaintiff's borderline intellectual functioning ("BIF"), asthma, obesity, and back and leg pain were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 14-15.  He concluded that the Plaintiff could perform light work involving only occasional balancing, stooping, kneeling, crouching, and crawling.  The ALJ further limited the Plaintiff stating

> The claimant must avoid concentrated exposure to fumes, odors, dusts, gasses and poorly ventilated areas.  In addition, the claimant requires a sit/stand option at one-hour intervals throughout the course of the workday on a consistent basis.  Nonexertionally, the claimant is able to perform work where interpersonal contact is incidental to work performed; complexity of tasks is learned and performed by rote, with few variables and little judgment; and supervision required is simple, direct, and concrete.

Tr. 17.  With the assistance of a vocational expert, the ALJ found the Plaintiff could perform work as a machine tender, assembler, and inspector.  Tr. 22.

The Appeals Council denied the Plaintiff's request for review on March 6, 2014.  Tr. 1-4. Subsequently, Plaintiff filed this action.  ECF No. 1.  This matter is before the undersigned by consent of the parties.  Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 12, 13.

## II.    **Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the

Commissioner's decision.  We must affirm the ALJ's decision if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. See 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

Plaintiff raises four issues on appeal: 1) The ALJ improperly concluded he did not meet the requirements for listing 12.05(c); 2) The ALJ failed to develop the record; 3) The ALJ made an improper RFC determination; and, 4) The ALJ's step five determination was incorrect.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

#### A. Listing 12.05(c):

In his first argument, the Plaintiff proposes that he meets the requirements of the mental retardation listing. Listing 12.05 provides as follows: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05; *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) (holding that Listing 12.05 requires claimant to demonstrate deficits in adaptive functioning in case where claimant otherwise meets the requirements in Listing 12.05(c), citing similar rulings in other circuits). The United States Court of Appeals for the Eighth Circuit has interpreted Listing 12.05(c) to require a claimant to show each of the following three elements: "(1) a valid verbal, performance, or full scale IQ score of 60 through 70, (2) an onset of the impairment before age 22, and (3) a physical or other mental

impairment imposing an additional and significant work-related limitation of function." *Maresh*, 438 F.3d at 899.

Plaintiff contends that his IQ of 68, poor academic performance, minimal education, and need for special education classes qualify him as mentally retarded. After reviewing the record, however, we disagree.

The ALJ considered the discrepancies between Plaintiff's IQ scores, Dr. Patricia Walz's assessment, and the Plaintiff's own report of activities. As noted above, the Plaintiff had a full scale IQ of 68, with a verbal score of 63, a perceptual reasoning score of 71, a working memory score of 74, and a processing speed of 86. Tr. 295-300. However, he admitted to daily activities that include raking and mowing the yard, cutting firewood with a chainsaw, watching television, looking for work, driving an automobile, shopping in stores, going out alone, caring for his personal care matters, and helping care for his parents. Tr. 188-195, 224-231. The Plaintiff also listed fishing and playing with his nieces and nephews as hobbies.

Although the Plaintiff did report difficulty in school, he admitted that educators did not place him in special education classes until the ninth grade. Tr. 296. And, while he contends he did not do well in school, he has presented no records to substantiate his claim. In fact, he acknowledges that he did not have to repeat any grades. Further, as Dr. Walz noted, he worked in jobs that required skills above the mentally retarded range. Specifically, he worked as a mechanic's helper changing the oil; rotating, balancing, and remounting tires; repairing frontends; and, conducting vehicle tune-ups. As such, it is the opinion of the undersigned that substantial evidence supports the ALJ's conclusion that the Plaintiff's level of adaptive functioning is above the mental retardation level. *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005); *Muncy v. Apfel*, 247 F.3d 728, 733 (8th Cir. 2001) (holding the ALJ may disregard the Plaintiff's I.Q. score when

5

it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with daily activities and behavior).

  B. **Develop the Record:**

  In his second argument, the Plaintiff asserts that the ALJ failed to develop the record with regard to the requirements of his PRW. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). Contrary to Plaintiff's allegation, the ALJ properly developed the record in this case.

  Plaintiff argues that the ALJ should have inquired further about his PRW to determine whether his employers made work accommodations for him, given his alleged mental retardation. Interestingly, we can find nothing in the record to indicate that the Plaintiff ever suggested that his prior employers made special accommodations for him. In fact, he testified that he worked as a mechanic's helper, describing his duties as general labor including oil changes and frontend work. Tr. 37. He also recounted repairing, mounting, and balancing tires and performing vehicle tune-ups. Tr. 39. Clearly, the level of skill required to perform these tasks exceeds the level anticipated by the mental retardation listing. Moreover, the Plaintiff is not now insisting that these employers made accommodations. Instead, he is arguing that the ALJ should have made inquiry without any evidence in the record to suggest that accommodations existed.

The Plaintiff also contends that the ALJ erred by failing to order an MRI of his lumbar spine. Dr. Ted Honghiran did state that the lumbar x-rays were difficult to discern, due to Plaintiff's obesity. And, he did recommend an MRI. However, in reviewing the record, we can discern no objective evidence to support the Plaintiff's contention of lower back pain. *See Forte*, 377 F.3d at 895 (holding that lack of objective medical evidence is a factor an ALJ may consider). He failed to seek out consistent treatment, and reported taking only Tylenol to treat his alleged pain. Accordingly, the ALJ did not err in failing to develop the record.

C.     **RFC Determination:**

Plaintiff also contests the ALJ's RFC determination. "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). The ALJ must also factor limitations resulting from symptoms such as pain into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a Plaintiff's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); see also *Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Plaintiff claims that he had little money and no insurance, making it impossible for him to receive consistent treatment. While a lack of funds may justify a failure to receive medical care,

7

a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for his alleged pain and disability is inconsistent with a claim of disabling pain. *Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003); *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). And here, there is no evidence to indicate that the Plaintiff sought out low cost or indigent health care. As such, we do not find excuse for his failure to seek out consistent treatment.

The pertinent medical evidence reveals as follows. The Plaintiff was hospitalized in December 2006 for suicidal ideation due to his inability to see his daughter and to keep informed regarding her medical condition. Tr. 270-281. The doctor started him on Zoloft and observed him overnight. Plaintiff improved, and the doctor discharged him the following day. His diagnosis was adjustment disorder with depressed mood. He was to follow up with Western Arkansas Counseling and Guidance Center. Tr. 270-271. However, he failed to do so. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against credibility).

In February 2010, Plaintiff underwent surgical repair of a fractured ankle. Tr. 331-332. However, he received no further treatment for this impairment.

On November 25, 2010, Plaintiff presented in the emergency room ("ER") with an elbow injury. Tr. 283-289. An examination revealed significant tenderness and a reduced range of motion. X-rays showed a possible avulsion fracture, and a CT scan revealed soft tissue swelling with an apparent dystrophic calcification. But again, no further treatment was sought.

On January 11, 2012, Dr. Chester Carlson conducted a general physical examination. Tr. 290-294. Plaintiff reported mental and learning problems, asthma, diabetes, and back pain. Aside from obesity, Dr. Carlson's examination revealed no abnormalities. The Plaintiff had a normal

8

range of motion in all areas with no evidence of atrophy, muscle spasm, or neurological or sensory deficits. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Dr. Carlson diagnosed the Plaintiff with asthma and diabetes. He noted no significant physical limitations.

On January 20, 2012, Dr. Patricia Walz conducted a consultative psychological evaluation. Tr. 295-300. The Plaintiff reported a ninth grade education with learning problems, but stated educators did not place him in special education classes until the ninth grade. Dr. Walz noted that he was gregarious, impulsive, and talked loudly during the exam. Plaintiff reported having a bad temper and not being safe around others. He also reported feeling depressed because he could not find a job. However, he was not currently taking any medication or participating in outpatient mental health treatment. Plaintiff's mood and affect were a bit anxious. And, although he reported a little trouble with concentration, Dr. Walz found his attention and concentration to be adequate.

Dr. Walz administered the WAIS-IV, which showed a full scale IQ of 68, but diagnosed him with borderline intellectual functioning based on his prior employment. She also diagnosed major depression, and assessed a global assessment of functioning ("GAF") score of 55-60.[1] Dr. Walz later completed an abbreviated medical source statement that is somewhat contrary to her GAF findings. She indicated that the Plaintiff was markedly limited in his ability to understand, remember, and carry out complex instructions and make judgments on simple work decisions; severely limited in his ability to make judgments on complex work decisions; and, moderately limited in his ability to understand, remember, and carry out simple instructions. Tr. 367-369. Further, she noted that his speech was clear and intelligible, his thought processes were logical and

---

[1] A GAF of 55-60 is indicative of only moderate symptoms. **Error! Main Document Only.***See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

9

goal oriented, he had no perceptual abnormalities, his social skills were fair, his IQ was borderline, and his speed of information processing was quite fast. Dr. Walz also indicated that he was a bit impulsive and tended to rush.

On February 2, 2012, Dr. Stephen Whaley completed a physical RFC assessment. Tr. 305-312. After reviewing the Plaintiff's medical records, he concluded the Plaintiff could perform a full range of medium level work. Dr. Bill Payne affirmed this assessment on May 17, 2012. Tr. 336.

On February 6, 2012, Dr. Brad Williams completed a mental RFC assessment. Tr. 313-330. Viewing only the Plaintiff's medical records, he determined the Plaintiff would have moderate limitations in the following areas: maintaining social functioning; maintaining persistence, concentration, and pace; understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace; accepting instructions and criticism from supervisors; setting realistic goals; and, making plans independently of others. Dr. Christal Jansson affirmed this assessment on May 22, 2012. Tr. 339.

On August 18, 2012, Plaintiff presented in the ER after falling and injuring his wrist. Tr. 341-363. The doctor diagnosed him with a sprain and prescribed Meloxicam and a splint. He received no further treatment.

On March 4, 2013, Dr. Ted Honghiran conducted a consultative orthopedic examination. Tr. 372-380. Plaintiff reported a history of worsening lower back pain that radiated into his right leg, however, he denied any current pain or discomfort. He also complained of intermittent right

knee pain, but reported only taking Tylenol for his pain. *See Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). An examination revealed a somewhat limited range of motion in his lumbar spine, but no muscle spasm or atrophy. His knees were stable with good range of motion, and he walked with a normal gait. X-rays of his cervical spine and knees were negative. Further, an x-ray of his lumbar spine was difficult to interpret due to his obesity. As such, Dr. Honghiran recommended an MRI. He then diagnosed the Plaintiff with a history of chronic lower back pain and leg pain caused by his weight and possible bulging discs. Although he found no significant objective findings on examination, Dr. Honghiran concluded that the Plaintiff could frequently lift up to 20 pounds; occasionally lift up to 50 pounds, push/pull with the right hand, climb ramps or scaffolds, and work near unprotected heights; sit, stand, and walk for two hours at a time each; sit for four hours total per day; stand for two hours total per day; and, walk for two hours total per day.

While the Plaintiff asserts that Dr. Honghiran's assessment proves he is incapable of performing a full range of light work, we note that the ALJ did not find the Plaintiff capable of a full range of light work. Instead, he limited him to light work with a sit/stand option at one-hour intervals throughout the course of the workday. Given Dr. Honghiran's standing and walking limitations, we believe substantial evidence supports the ALJ's assessment. Clearly, the Plaintiff can sit for one hour at a time for a total of four hours per day, and is capable of standing and walking at one-hour intervals for two hours each. When aggregated, this totals eight hours.

Plaintiff also alleges that the ALJ failed to include Dr. Walz's assessment of moderate difficulties with simple instructions and the need to repeat and rephrase questions in his RFC determination. Dr. Walz did conclude the Plaintiff was severely limited with regard to making judgments on complex work decisions and moderately limited with regard to understanding,

remembering, and carrying out simple instructions. However, we note that the Plaintiff was able to work despite these limitations. And, although he reported being fired from his last job due to difficulty getting along with authority figures, he also indicated that he lost his job after the business was destroyed by fire.

Further, we note that the Plaintiff failed to seek out mental health treatment during the relevant time period. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). Moreover, doctors prescribed no medications and he had no ongoing diagnoses. Accordingly, the undersigned is of the opinion that substantial evidence supports the ALJ's determination that the Plaintiff can perform work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete.

### D. **Step Five Analysis:**

Finally, the Plaintiff avers that the ALJ failed to meet his burden at Step 5 of the sequential analysis. It is his argument that the hypothetical questions posed to the vocational expert did not contain all of his limitations, rendering the vocational expert's testimony null and void. However, "[t]he ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted).

Here, the ALJ's hypothetical question included all of the Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of the Plaintiff's RFC. Therefore, based on our previous conclusion, *see supra* Part C, that the ALJ's findings of Plaintiff's RFC are supported

by substantial evidence, we hold that the hypothetical question was proper. Therefore, the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*

## IV. Conclusion:

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 12th day of May, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE